FILED
2008 Feb-01 PM 01:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CR 02-S-192-S** |
| | ) | **Case No. CV 05-S-8089-S** |
| **FRANCIS H. DISHMON** | ) | |

# MEMORANDUM OPINION

The cases referenced above are before the court on the motion of the defendant, Francis Harry Dishmon, to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Upon consideration, the court concludes the motion is due to be denied.

## I. BACKGROUND

### A. Procedural History

The defendant was indicted on May 2, 2002, and charged with two counts of bank robbery in violation of 18 U.S.C. § 2113(a): *i.e.*, robbery of the First Commercial Bank in Birmingham, Alabama, on November 16, 2000; and robbery of the Compass Bank in Fairfield, Alabama, on November 18, 2000.[1] On the date of his indictment in this court, the defendant already was serving a seventy-month term of imprisonment with the United States Bureau of Prisons as a result of his conviction

[1] *See* CR 02-S-192-S, doc. no. 1 (Indictment). All references to "doc. no. __" are to the numbers assigned by the Clerk of Court to each item in a particular case file. The pleadings associated with the original criminal case file include a reference to that case (CR 02-S-192-S), and the pleadings associated with the present, post-conviction, civil proceedings include a reference to that civil action (CV 05-S-8089-S).

by a jury verdict on March 21, 2001, in the United States District Court for the Northern District of Florida, for robbery of the South Trust Bank in Panama City, Florida on November 20, 2000.[2]

The defendant was arraigned in this court on December 19, 2002, and entered pleas of "not guilty" to both counts of the indictment. Mark Polson entered his appearance as defense counsel on December 23, 2002.

The defendant initially filed a *pro se* motion to dismiss the indictment, alleging a violation of the Interstate Agreement on Detainers.[3] A hearing was conducted by a magistrate judge, who subsequently filed a Report recommending that the motion be denied.[4] The defendant objected to the legal conclusions of the magistrate judge,[5] but this court overruled those objections, adopted the magistrate's recommendation, and denied the motion to dismiss.[6] The case then proceeded to trial. The defendant

---

[2] The defendant's file in the Northern District of Florida was assigned Case No. 5:00-CR-00036-SPM-ALL. The defendant's appeal from his conviction in that court was denied by the Eleventh Circuit Court of Appeals on March 4, 2002. *See United States v. Dishmon*, 33 Fed. Appx. 993, 2002 U.S. App. LEXIS 7949 (11th Cir. 2002). *See also* CV 05-S-8089-S, doc. no. 3 (Government's Response), at 2 n.1.

[3] *See* CR 02-S-192-S, doc. no. 2.

[4] *Id.*, doc. no. 8.

[5] *Id.*, doc. no. 9.

[6] *Id.*, doc. no. 12.

was convicted on both counts of the indictment by a jury verdict returned on February 7, 2003.[7]

On the first day of trial, the defendant's attorney filed a motion *in limine* and a motion to suppress evidence that had been seized during a search of a Panama City, Florida motel room jointly occupied by the defendant and Stacey LeShawn Harrison.[8] A hearing was held on the motion *in limine*, which was granted in part and denied in part:[9] *i.e.*, that aspect of the motion seeking the exclusion of certain evidence under Federal Rule of Evidence 404(b) was denied.[10] The court conducted a suppression hearing during trial, following which the suppression motion was denied.[11]

A Presentence Investigation Report ("PSR") was prepared to assist this court in sentencing. The defendant filed objections to the PSR.[12] Following a sentencing hearing, the defendant was sentenced to serve 115 months imprisonment on each count of conviction, such sentences to run concurrently with each other, but

---

[7] *See* Trial Transcript Vol. 37 at 35. (The trial transcript was assigned document numbers 34 through 37, inclusive, in CR 02-S-192-S.)

[8] *See* CR 02-S-192-S, doc. no. 42.

[9] *See* Trial Transcript Vol. 34 at 2-12.

[10] *Id*. at 15-23.

[11] *See* Transcript Vol. 35 at 2-59.

[12] *See* CR 02-S-192-S, doc. no. 14.

consecutive to the sentence imposed by the United States District Court for the Northern District of Florida for the bank robbery committed in that State.[13]

The defendant appealed his conviction and sentence,[14] but the Eleventh Circuit affirmed on December 2, 2004. *See United States v. Dishmon*, No. 03-13875, 2004 U.S. App. LEXIS 28437 (11th Cir. Dec. 2, 2004) (*per curiam*). The Eleventh Circuit's unpublished opinion and mandate were filed in Case No. CR 02-S-192-S as doc. no. 44 (hereinafter "Opinion").

**B. Offense Conduct**

On direct appeal, and when describing the "overwhelming evidence in this case that Dishmon was guilty of the crimes charged," the Eleventh Circuit summarized the pertinent facts as follows:

> At trial, the government presented testimony from Brett Adams, the branch manager of the First Commercial Bank in Birmingham, Alabama, that was robbed on November 16, 2000. Adams testified that he saw a suspicious man enter the lobby of the bank. Adams approached the man and asked if he could help him. Adams testified that the man "jumped" when Adams approached him, and that Adams then went to get a security guard. The robbery occurred while Adams was searching for the security guard. Adams described the man as a black man of medium build, about 5 feet 10 inches tall, wearing a black

[13] *See id*., doc. no. 38 (Transcript of Sentencing Hearing held July 22, 2003) at 24. On July 28, 2003, however, this court *sua sponte* amended the sentence pronounced in open court to be 96 months of imprisonment on each count of conviction. *See id*., doc. no. 18.

[14] *Id*., doc. no. 22.

cap, a gold jacket with "Chicago" written on it, blue jeans, and tan boots with thick, light-colored soles.

Stacey Abernathy Stephens, the bank teller who was robbed at the First Commercial Bank, also testified. She made an in-court identification of Dishmon and testified that there was "no doubt in [her] mind" that he was the person who had robbed the bank. Stephens described the robber as a black man who was wearing a gold, shiny jacket, with "Chicago" written across the front, and a dark baseball cap, with "SOX" written across the front.

Stephens further testified that a man approached her teller window with a checkbook in his hand. He walked over to the teller window, did not touch anything, leaned over with the checkbook in his hand, and handed her a note. He asked her if she understood the note and told her to hurry because he had a "magnum" in his pocket. The note asked for all the currency denominated $100 and $50. Stephens told the man that she did not have any currency denominated $100 but gave him everything else. She handed him two bundles of currency denominated $20 and $50, including bait money. The man stuffed the money in his pocket and left with more than $1300.

The government also presented testimony from Birmingham Police Officer Jerome Fleming, who responded to the November 16 robbery of the First Commercial Bank. Officer Fleming showed photo line-ups to both Adams and Stephens. The photo identifications were conducted separately, and both Adams and Stephens independently identified Dishmon from the photos as the man who robbed the bank. At the photo line-up, Adams was 90 percent sure Dishmon was the robber and Stephens was 70 percent sure Dishmon was the robber. Stephens testified that her identification was not positive because Dishmon's eyes were closed in the photograph and because of the way he was holding his face. Officer Fleming conceded that the descriptions Adams and Stephens gave to the police immediately after the robbery were somewhat different from their descriptions at trial.

> Nicole Watters, the bank teller who was robbed at the Compass Bank in Fairfield, Alabama, also testified at the trial. Watters testified that near closing on November 18, 2000, a man approached her teller window. She testified that he was wearing a black hat with "SOX" written on it in white. She asked him if she could help him, and he did not reply. She asked again, and he handed her a slip of paper. The man mumbled something to Watters, but she could not understand him. As she was reading the paper, the man asked her, "Do you understand me?" He then told her to give him all currency denominated $50 and $100. Watters gave him all her money, totaling approximately $4000. Watters subsequently identified Dishmon from a photo line-up as the man who had robbed the Compass Bank.
>
> The government also presented testimony from FBI Agent Lorenzo Moore. Moore retrieved the video surveillance tapes from both the November 16 and November 18 bank robberies. He reviewed those tapes and created still photographs from them. Moore testified that the photographs were unaltered except for lighting adjustments and cropping, and that they were true and accurate depictions of the images from the video surveillance tapes. The photographs and video tapes were presented to the jury.

Opinion at 3-6.

Additionally, the court described the evidence concerning the search of the Florida motel room occupied by the defendant as follows:

> Briefly, Panama City Police Detective Donald Askew, investigating a bank robbery that occurred in Panama City on November 20, 2000, obtained permission from Dishmon's roommate, Stacey LeShawn Harrison, at a motel in Panama City to search their room at the motel. After giving verbal consent, Harrison opened the door to his room for the officers and remained in the room during the search. Detective Askew did not ask Dishmon for permission to search the room. The officers seized several items from the motel room, including three handwritten receipts from a Birmingham motel and a money strap

> band, all found in pockets of a pair of blue jeans hanging in a rack in the motel room. Harrison told the officers that the jeans belonged to Dishmon. The officers also seized some credit card receipts, money wrappers from another pair of jeans, a black plastic tool case with tools, size 11 ankle-high tan boots, and size 36 denim pants.

Opinion at 2.

## II. THE CLAIMS PRESENTED

The defendant submitted his present motion for relief on December 1, 2005.[15] He makes five assertions: (1) his conviction is the result of an illegal search and seizure; (2) he is actually innocent; (3) the prosecution knowingly solicited and used false testimony; (4) his trial counsel was ineffective; and (5) his sentences should have run concurrently with the sentence imposed by the United States District Court for the Northern District of Florida.[16] The magistrate judge assigned this matter ordered the government to appear and show cause why the relief requested by the

---

[15] "The Eleventh Circuit applies the 'mailbox rule' to deem a prisoner's section 2255 motion to have been filed upon the 'date that he delivered it to prison authorities for mailing, presumptively, . . . the day that he signed it." *Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (*per curiam*).

[16] *See* CV 05-S-8089-S, doc. no. 1.

defendant should not be granted. The United States filed a response,[17] the defendant filed a traverse,[18] and the government filed a reply.[19]

## III. DISCUSSION

### A. Procedural Defaults

#### 1. Failure to allege a factual basis for the claims

The government's initial response to the defendant's claims is that he

> failed to allege, plead, or state any factual basis for his claims. The defendant failed to state any facts on the face of the form itself, and while he also referred to an attached memorandum, he failed to file any such memorandum of facts. Therefore, on its face, defendant's § 2255 motion fails to meet the requirements of Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

(Response at 6). In that regard, the Eleventh Circuit has said that, "[d]espite construction leniency afforded *pro se* litigants, we nevertheless have required them to conform to procedural rules." *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002). In this case, and contrary to the government's assertion, the defendant did file a memorandum in support of his motion. Although that pleading is not a model of clarity, it alleges facts in support of the defendant's motion that are sufficient to overcome the government's objection.

---

[17] *Id.*, doc. no. 3 (hereinafter "Response").

[18] *Id.*, doc. no. 6 (hereinafter "Traverse").

[19] *Id.*, doc. no. 7 (hereinafter "Reply").

**2. Failure to allege a constitutional claim**

The government next asserts that some of the defendant's claims are not cognizable under 28 U.S.C. § 2255. Specifically, the government argues that two of the defendant's claims — *i.e.*, the prosecution knowingly solicited and used false testimony, and, the defendant's sentences in this court should have been made to run concurrently with his Florida sentence — are not constitutional claims. The government's argument in support of this contention reads as follows:

> Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal. *See, e.g., United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982) (collecting cases). Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994); . . . and (2) "relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A sep. 1981)). Accordingly, a non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment. *Frady*, 456 U.S. at 165, 102 S. Ct. 1593, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice. *Stone v. Powell*, 428 U.S. 465, 477 n.10, 96 S. Ct. 3037, 3044 n.10, 49 L. Ed. 2d 1067 (1976).
>
> *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004), *cert. denied*, 2004 U.S. LEXIS 5210 (U.S., Oct. 4, 2004).

(Response at 10). The government concludes by arguing that these claims "neither raise nor allege constitutional error, but instead are merely 'fundamental trial errors' that were available on direct appeal. As such, these two claims should be dismissed as not cognizable in a § 2255 proceeding." (*Id*. at 11).

The defendant's response is that his false testimony claim is a due process violation that he could not have presented earlier because he did not receive the relevant information until May of 2005. (Traverse at 4). With regard to the sentencing claim, he fails to explain what constitutional deprivation has occurred.

Assuming for the sake of argument that the defendant's false testimony claim raises a constitutional challenge that is appropriate for review under § 2255 due to the defendant's assertion that he did not learn of the details until after the initial proceedings, it still is without merit. As will be discussed below, the defendant is not entitled to any relief.

With regard to the defendant's sentencing claim, the court finds that it does not present a cognizable constitutional challenge. The defendant simply argues that the sentences imposed by this court should run concurrently with his Florida sentence because he "was not removed from his ongoing sentence by way of [a] writ of habeas corpus ad prosequendum; which places [him] on loan to [the] instant jurisdiction." (Motion at Attachment, p. 9). He is not entitled to relief for two reasons. First, the

court has checked with the United States Marshal for the Northern District of Alabama and has determined that the defendant did appear in this court pursuant to a writ of habeas corpus *ad prosequendum*. Second, this claim, even if factually correct, does not amount to a constitutional deprivation.

**3. Claims previously raised on direct appeal**

The government next asserts that the defendant's first two grounds for relief (*i.e.*, the Fourth Amendment violation and "actual innocence") were raised in the defendant's direct appeal to the Eleventh Circuit Court of Appeals. (Response at 12). Accordingly, the United States concludes that they are precluded from review in this proceeding. *Id*. It is well-settled that "prior disposition of a ground of error on direct appeal, in most cases, precludes further review in a subsequent collateral proceeding." *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994) (citation omitted).

A review of the record before this court amply demonstrates that the Fourth Amendment claim was raised during the defendant's trial proceedings. Initially, the defendant filed a pre-trial motion to suppress the evidence seized as a result of the search of his Florida hotel room. This court conducted a suppression hearing during the trial that included the presentation of witness testimony, including cross-examination by the defendant's attorney. The motion was subsequently denied. The search and seizure question was again raised on direct appeal. The Eleventh Circuit

denied relief, stating, "[W]ithout consideration of the allegedly tainted evidence, there was overwhelming evidence in this case that Dishmon was guilty of the crimes charged." (Opinion at 3). The Court concluded as follows:

> With the testimony of the three eyewitnesses who each identified Dishmon as the bank robber and the view of the video surveillance tapes and still photographs from those tapes, the jury would be virtually compelled to find the defendant guilty of the crimes charged beyond a reasonable doubt without reference to the allegedly tainted evidence. Even if there was error by admitting the alleged illegally seized items from the motel room, any error was harmless beyond a reasonable doubt.

*Id*. at 6. Accordingly, this claim is precluded from further review.

With regard to the actual innocence claim, the defendant did not raise this specific claim either at trial or on direct appeal. However, during the trial, he presented and argued two motions for judgment of acquittal. The motions were denied. The defendant subsequently challenged on appeal this court's denial of his motions for judgment of acquittal premised upon the insufficiency of the evidence adduced at trial. The defendant's challenge to the denial of these trial motions was rejected on direct appeal.

With regard to the latter claim, the court finds that a claim of actual innocence is legally distinct from a claim that the evidence adduced at trial is insufficient. The applicable standards for reviewing such claims are different. Thus, this claim was not presented and reviewed in the earlier proceedings. However, as will be discussed

below, the evidence purportedly in support of this claim is insufficient to warrant further review or relief.

**4. Failure to present claims on direct appeal**

The United States further asserts that two of the defendant's claims — *i.e.*, the prosecution knowingly solicited and used false testimony, and, he was erroneously sentenced — are barred from review, or procedurally defaulted, because the defendant failed to raise them on direct appeal. (Response at 14). The law in this area is well-settled:

> [A]n available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding. A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development. When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error.

*Mills*, 36 F.3d at 1055.

The United States is correct that the defendant did not raise his false testimony and erroneous sentencing claims on direct appeal. As previously noted, the defendant asserts that he did not possess the relevant documents to demonstrate the falsity of the testimony until after his direct appeal.[20] However, as will be shown below, he is not

[20]The record demonstrates that although the defendant may not have possessed the report of the interview until after the direct appeal, his counsel had a copy of the same at trial and used it to

entitled to relief because he cannot meet the cause and prejudice or actual innocence exceptions to warrant additional review.

> In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all. *See, e.g., Smith v. Murray*, 477 U.S. 527, 534, 106 S. Ct. 2661, 2666, 91 L. Ed. 2d 434 (1986); *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992); *Lomelo v. United States*, 891 F.2d 1512, 1515 (11th Cir. 1990).[ ] Further, to show cause for procedural default, [the defendant] must show that some objective factor external to the defense prevented [the defendant] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [petitioner's] own conduct.[ ] *Smith v. Jones*, 256 F.3d 1135, 1145 (11th Cir. 2001) (noting 'that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule' (quoting *Murray v. Carrier*, 477 U.S. at 488, 106 S. Ct. at 2645)); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001); *McCoy*, 953 F.2d at 1258[ ].

*Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004) (footnotes omitted). As the Eleventh Circuit further explained,

> Perceived futility of a claim does not constitute cause for procedural default (citation omitted). "Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim." (citation omitted). As stated in *Lomelo*, "In determining whether cause exists, the Supreme Court has held that the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was available at all." 891 F.2d at 1515.

---

cross-examine the witness.

*Lynn*, 365 F.3d at 1235 n.19. The defendant in this case has failed to present any evidence that "some external factor to the defense" prevented him from raising these two issues on direct appeal. In fact, the record demonstrates otherwise. Specifically, the response of the United States and the trial transcript show that counsel possessed the witness statements at the time of the relevant cross-examinations. The fact that the defendant personally may not have possessed them until after the appeal does not demonstrate that "some external factor to the defense" prevented him from raising this issue on direct appeal.

With regard to the sentencing issue, the defendant has failed to present any evidence to support a claim that he was prevented from raising this issue on appeal. Additionally, as previously discussed the claim is factually inaccurate.

Still further, with regard to both claims, the defendant has not established the necessary prejudice to warrant further review and relief. *See United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596, 71 L. Ed. 2d 816 (1982) (a defendant must show that the deficiency "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions").

First, with regard to the false testimony claim, the defendant asserts that the First Commercial Bank manager, Brett Adams, did not speak with the robber as he testified, and, the bank surveillance tape fails to reveal this interaction. (Motion,

Memorandum at 6-7). The defendant also notes that this is not borne out by Adams' report of interview following the robbery. The defendant is correct that the report of the interview states that Adams noticed the defendant talking with a teller and that he seemed to be "jumpy." (Adams FBI 302).[21] Thus, Adams got up from where he was seated to find the bank security officer who was in the lobby. According to the report of the interview, when Adams returned, the defendant was gone. *Id*. The court does not attach the significance to the foregoing trial testimony that the defendant does. This is particularly true because defense counsel extensively cross-examined Adams during the trial, pointing out that Adams' observation time was limited, he did not hear the defendant speak, he (Adams) was quite shaken up by the robbery, and that it was difficult for Adams to describe the robber because of the clothing the robber was wearing. (T. Tr. Vol. 34 at 122-35).

To the extent defendant's argument includes an assertion that the presentation of the purportedly false testimony resulted in a miscarriage of justice, the court disagrees. The applicable law is clear, "'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default [of the asserted constitutional violation].' *Murray*

---

[21] Adams' FBI 302 is located at the Motion, Exhibit 1(a) (hereinafter "Adams FBI 302").

*v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397, 413 (1986)." *Mills*, 36 F.3d at 1055. "'Actual innocence' means factual innocence, not mere legal innocence." *Lynn*, 365 F.3d at 1235 n.18 (citation omitted). "To establish actual innocence, [the defendant] must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998) (internal quotations marks and citation omitted).

The evidence presented by the defendant is not newly discovered, it is not significant, and it fails to establish any viable, independent constitutional violation that prevented the defendant from establishing his innocence during the trial and on direct appeal. Accordingly, the court finds this claim to be insufficient to entitle the defendant to any relief.

With regard to the sentencing issue, the court has already found that it does not rise to the level of a constitutional claim. Additionally, the court again finds that the defendant has not demonstrated the requisite prejudice or harm to excuse his failure to raise this claim earlier.

**B. Ineffective Assistance of Counsel Claims**

The defendant next alleges that his counsel was ineffective. Specifically, he asserts two claims – *i.e*, his trial counsel should not have used FBI Agents to locate

his alibi witness,[22] and, prosecution witnesses Stacey Harrison, Stacey Stephens, Nicole Watters, Brett Adams, and Lorenzo Moore should have been cross-examined regarding their conflicting statements. (Motion, Memorandum at 8-9). The applicable standard of review is well-established:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or . . . sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). The defendant must satisfy two requirements to prevail on an ineffective assistance of counsel claim. He must show that "(1) 'counsel's representation fell below an objective standard of reasonableness,' *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064, and that (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' *id.* at 694, 104 S. Ct. at 2068. In this circuit, we have referred to the latter element as the

[22]In his reply, the defendant asserts that this is evidence of counsel's collusion with the United States. (Reply at 5).

'prejudice' prong and the former element as the 'performance' prong." *Reece v. United States*, 119 F.3d 1462, 1464 n.4 (11th Cir. 1997). When considering such claims, a court need not address both components because a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel. *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000); *see also Reece*, 119 F.3d at 1464 n.4.

In examining the first prong under *Strickland*, the Eleventh Circuit has articulated the relevant considerations as follows:

> The standard for counsel's performance is reasonableness under prevailing professional norms. The purpose of ineffectiveness review is not to grade counsel's performance. . . . To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled. . . . The petitioner must establish that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance.
>
> Courts must indulge [the] *strong presumption* that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment. Thus, counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy. Given the strong presumption in favor of competence, the petitioner's burden of persuasion — though the presumption is not insurmountable — is a heavy one. . . . [B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a *petitioner must establish that no competent counsel would have taken the action that his counsel did take*. . . .

> In reviewing counsel's performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time. [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Johnson v. Alabama*, 256 F.3d 1156, 1176-77 (11th Cir. 2001) (quoting *Chandler v. United States*, 218 F.3d 1305, 1313-16 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204, 121 S. Ct. 1217, 149 L. Ed. 2d 129 (2001)) (citations and internal quotation marks from *Chandler* omitted in *Johnson*) (emphasis added).

With regard to the second prong under *Strickland*, it is not enough to show that any errors had some conceivable effect on the outcome of the proceeding. *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002). To succeed on an ineffective assistance of counsel claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.

There is no evidence in this case that the defendant has satisfied either *Strickland* prong. His allegation that counsel should have hired a private investigator to pursue the alibi witness fails because there is no evidence that counsel's acts or omissions were outside the wide range of professionally competent assistance. Additionally, there is no evidence that the witness' testimony was negatively impacted by the fact that she was located by the FBI. The defendant has not

submitted any evidence showing that her testimony is now favorable towards him. Thus, the claim is due to be denied.

Turning to his second claim of ineffective assistance — that witnesses Harrison, Stephens, Watters, Adams, and Moore should have been cross-examined regarding their conflicting statements (Motion, Memorandum at 8-9) — this court finds it also is without merit. Contrary to the defendant's assertions, these witnesses were cross-examined by defense counsel. (See T. Tr. Vol. 35 at 122 to 142, 158 to 173; Vol. 36 at 96 to 127, 138 to 144). The cross-examinations of Adams, Stephens, and Watters included questions concerning the stress of the events impacting their ability to perceive the robber and the inconsistencies in their prior descriptions to law enforcement and their trial testimony. (See T. Tr. Vol. 35 at 122 to 142 (Adams), 158 to 172 (Stephens); Vol. 36 at 96 to 117 (Watters)). The cross-examination of Harrison focused on his criminal history and motives for testifying. (See T. Tr. Vol. 36 at 138 to 144). The cross-examination of FBI photographic coordinator Moore was done outside the presence of the jury because his testimony involved the authentication of video and photographic evidence that the court ultimately admitted. (See T. Tr. Vol. 36 at 32 to 35). The defendant has failed to show how counsel was ineffective in this regard. Still further, he has failed to show any specific prejudice. Thus, this claim also is due to be denied.

In the "Summary of Facts Affidavit" attached to his Traverse, the defendant further asserts that counsel failed to properly argue that the witnesses misidentified him at trial and that there was actually another robber. (Traverse "Summary of Facts Affidavit" at 1). The transcript of the trial demonstrates that counsel did in fact present this defense on behalf of the defendant. (See T. Tr. Vol. 36 at 221 to 226). It simply was rejected by the jury. Accordingly, counsel was not ineffective.

## IV. CONCLUSION

Premised on the foregoing, the defendant's motion to vacate his conviction and sentence is due to be denied. An order in accordance with this finding will be entered.

DONE this 1st day of February, 2008.

Lynwood Smith

United States District Judge